UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPICO BEVERAGES, INC.,

    Plaintiff,

v.                                                      CASE NO.: 8:11-CV-2704-T-23MAP

US CO PACK, LLC, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a trademark action. The Plaintiff ("Tampico") manufactures and markets juice drink concentrates throughout the United States under a family of federally-registered Tampico brand trademarks. Defendants market and sell juice products to retail stores catering to an Hispanic customer base under its Tan Rico Que Rico! brand. At issue is whether the two brands are confusingly similar and if so whether Tampico's preliminary injunction motion should be granted. After a hearing on the matter, I find the two marks are not confusingly similar and that Tampico has not shown it is substantially likely to prevail on the merits. Accordingly, I recommend the district judge deny Tampico's motion for preliminary injunction.[1]

*A. Background*

Since 1989, Tampico has manufactured and marketed high quality and value-added

---

[1] The district judge referred this matter to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636 (doc. 13).

juice drink concentrates to a network of independent bottlers and distributors who use the concentrates to prepare and bottle ready-to-drink beverage products. Tampico purports to be a top seller of refrigerated fruit flavored drinks in the United States and in Florida. Like many other refrigerated juice products, Tampico's juices are sold in see-through plastic gallon jugs (Citrus Punch, Mango Punco, Tropical Punch, and Island Punch are the most popular). And it says it sells hundreds of millions of gallons of its refrigerated juice products annually. Tampico owns a family of federally-registered Tampico brand trademarks: registration no. 1,602,666 for the Tampico mark, registered on June 19, 1990; registration no. 1,626,204 for the Tampico Citrus Punch & Design mark, registered on December 4, 1990; registration no. 3,219,333, for the Tampico Punch mark, registered on March 20. 2007; registration no. 3,420, 538 for the Tampico Light mark, registered on April 20, 2008; registration no. 3,552,075 for the Tampico Plus mark, registered on December 23, 2008; registration no. 3,581,489 for theTampico Freezer Pops mark, registered on February 24, 2009; 3,581,490 for the Tampico Flavored Pops, registered on February 24, 2009; registration no. 3,803,955 for the Tampico mark, registered on June 15, 2010; registration no. 3,892,553 for the Tampico mark, registered on December 21, 2010; and registration no. 3,917,012 for the Tampico Plus mark, registered on February 8, 2011. U.S. Registration Nos. 1,602,204 for Tampico and 1,626,204 for Tampico Citrus Punch & Design have become incontestible under 15 U.S.C. §1065. Tampico Beverages is also the owner of Florida Trademark Registration T11000001109 for the mark Tampico for fruit juice drinks containing water. These trademarks cover fruit juice drinks containing water, refrigerated

punches and fruit flavored products as well as a variety of related products, including soft drinks, syrups for making beverages, non-carbonated fruit-flavored beverages, freezer pops, flavored or sweetened gelatins, yogurt drinks, tea, and candy.

The Defendants, in contrast, are relative newcomers to the juice market. They market under their Tan Rico Que Rico! brand targeting Hispanic customers and retail stores catering to a Hispanic customer base. The phrase Tan Rico Que Rico!, a Spanish phrase, means "How Rich, How Delicious!" or "So Rich, So Delicious!" or "Very Rich, Very Delicious!" Although Tampico claims that the Defendants abbreviate Tan Rico Que Rico! brand to just Tan Rico or TanRico, the Defendants maintain otherwise declaring it has always used all four separate words, spaced apart, and ending with the exclamation mark. *See* Gonzalez Decl., doc. 20, Ex. B , ¶¶ 12-14; Vander Meade Decl., doc. 20, Ex. A, ¶¶ 13-15. US Co Pack has applied for trademark registration with the U.S. Patent & Trademark Office for its Tan Rico Que Rico! mark.

Soon after learning about the introduction of Tan Rico Que Rico! beverages in the Florida market, Tampico sent a cease and desist letter to the Defendants asserting the name was confusingly similar to the Tampico brand. The Defendants denied the similarity. This action followed.[2] In support of its complaint and the preliminary injunction motion, Tampico

---

[2] Tampico's complaint includes seven counts: Federal Trademark Infringement (count I), Federal Unfair Competition and False Designation of Origin (count II), Federal Trademark Dilution (count III), Florida Trademark Infringement (court IV), Florida Trademark Dilution (count V), Common Law Unfair Competition (count VI), and Unfair and Deceptive Trade Practices (count VII).

included a store's advertisement using the name "TanRico" instead of Tan Rico Que Rico! Upon receipt of this information, the Defendants sent letters to their customers notifying them that they should not refer to US Co Pack's products as "TanRico" and instead use the full mark, Tan Rico Que Rico!, in their advertising. *See* Gonzalez Decl., ¶¶ 22-23; Decl. of Vander Meade Decl., ¶¶ 23-24.

## B. Standard of review

It bears mentioning that a preliminary injunction in advance of trial is an extraordinary remedy. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). Tampico must meet the obvious test: (1) a substantial likelihood of success on the merits; (2) irreparable harm if the injunction is not issued; (3) the threatened harm to Tampico outweighs any potential harm the proposed injunction causes the Defendants; and (4) the injunction would not be adverse to the public. *Id.* Tampico fails the first element; consequently, I need not discuss the remaining parts of the test. *Id.*

## C. Discussion

To prevail on its claims for trademark infringement Tampico must show the Defendants' mark is likely to cause consumer confusion with its mark. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (trademark). A seven-factor test assesses whether or not the likelihood of customer confusion exists; hence, I evaluate Tampico's motion looking at the following: (1) Tampico's type of mark; (2) the similarity of Tampico's marks with the Tan Rico Que Rico! mark; (3) the similarity of products or services the marks identify; (4) the similarity of parties' retail outlets and customers; (5) the

similarity of advertising media used; (6) the Defendants' intent; and (7) existence of actual confusion. *Frehling, supra,* at 1335. Tampico has shown the first and third factors weigh in its favor but not the remainder.

### 1. the type of mark

Trademarks are often classified in the following categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 768 (1992). Suggestive, arbitrary, and fanciful marks are considered to be inherently distinctive and entitled to protection due to their intrinsic nature which identifies a particular source of a product. *Id.* Generic marks, on the other hand, "refer to the genus of which the particular product is a species," and are not registrable as trademarks. *Id.* In the middle are descriptive marks which may or may not reach the level of distinctiveness. *Id.* at 769. Tampico, which is a city in Mexico and not an English word, convincingly argues its mark is arbitrary. It is not suggestive of any characteristics of beverages or juices. Indeed, it seems to bear no relationship to the product. As an arbitrary mark, Tampico need not show that its mark has attained "secondary meaning." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 974 (11th Cir. 1983).

### 2. similarity of marks

Assessing the similarity of the marks or their design, which is the second factor, is "really nothing more than a subjective eyeball test." *Exxon Corp. v. Texas Motor Exchange*

*of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980).³ A court evaluates the overall impression of the mark as opposed to just comparing individual features. Obviously, the more the marks are similar in design, the more the likelihood of confusion. *Id.* at 504-505 (finding Exxon and Tex-On were not likely to confuse). I do not find Tan Rico Que Rico! to be confusing with Tampico.

Tampico claims "Tan Rico" looks and sounds similar its mark. But that claim, say the Defendants convincingly, is misleading because they only market and sell their products under the full four-word phrase Tan Rico Que Rico! and omitting words from their mark is disallowed. *Holding Co. of the Villages, Inc. v. Power Corp.*, 2012 WL 39395, *5 (M.D. Fla. Jan. 9, 2012) ("The Villages" not similar to "Village(s) of Lakeside Landings"). *See also*: *Mango's Tropical Café, Inc. v. Mango Martini Restaurant & Lounge,* 2011 WL 693526 (S.D. Fla. December 31, 2011) (finding parties' marks dissimilar as a whole) (citing *Michael Caruso and Co. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1460-61 (S.D. Fla. 1998) ("The mere fact that both marks incorporate a form of the common word 'bongo' does not render the marks similar" ... "Bongo" and "Bongos Cuban Caf" had distinctive appearances and sounds; differences in the marks ... all worked to clearly convey different commercial impressions).

Nor are the two marks visually similar. The four-word Spanish phrase, Tan Rico Que

---

³ The Eleventh Circuit in an *en banc* decision, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Rico!, is dissimilar to the one-word Tampico. Each of the four words begins with a capital letter, followed by the other letters in the words in lowercase fonts. The Tampico lettering is blue, while the Tan Rico Que Rico! lettering is red. Tampico's mark is all in capital letters. Moreover, the jugs and labeling used by Tampico differ from the jugs and labels used by Defendants. *See* doc. 20, Exhibit G. The two marks do not sound the same either. Per the declaration of a Spanish translator, the phrase Tan Rico Que Rico! is pronounced by "trilling" or "rolling" the "R" in Rico, such that it does not sound at all similar to the syllable -pico in the Tampico's mark. *See* Whittaker Decl., doc. 20, Ex. C, ¶ 7.

Finally, the meanings of the marks are also dissimilar. As stated, Tan Rico Que Rico! means "How Rich How Delicious" "So Rich So Delicious" or "Very Rich Very Delicious" but the word Tampico is the name of a Mexican city without any meaning in the English language. Whittaker, ¶ 6. Hence, I find the parties' mark dissimilar as a whole because I do not find a high degree of similarity between the two marks such that consumers would likely be confused by the two.

### 3. similarity of products

I find, and Defendants agree, that the parties provide similar products. *See* Defendants' memorandum (doc. 20, p. 15).

### 4. similarity of retail outlets

As Tampico states, "[l]ikelihood of confusion is more probable if the products are sold through the same channels to the same purchasers." *Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir. 1986). Tampico sells to retail outlets of all types and sizes; the

Defendants' sell to retailers catering to Hispanics. Both parties sell fruit flavored punch drinks, however, and customer overlap, as Defendants recognize, is naturally expected. Given the lack of evidence regarding this factor at this early juncture, I find that it neither supports nor mitigates against a finding of confusion by consumers. Nonetheless, it is reasonable to assume that the Defendants' targeted audience, who are likely to understand some Spanish, are less likely to attribute any similarity between Tampico and Tan Rico Que Rico!.

        *5. advertising media*

As Tampico notes, where the parties use similar advertising media, there is also a stronger likelihood of confusion. Per Tampico, both parties advertise primarily via grocery store fliers and in-store promotions. And, both products are featured on end caps of grocery stores in order to draw attention to them. Defendants dispute Tampico's contention that the parties advertise similarly, citing that they do not spend the "tens of millions of dollars" on advertising that Tampico purports to spend. Tampico uses "billboards, radio, online ads, social media, print (newspaper) ads, local events, national sweepstakes, and street promotions" for its nationwide advertising. *See* Tampico's motion (doc. 3, Exhibit 1, ¶ 13). In contrast, Defendants' effort is much more modest – only one local newspaper (The Tampa Tribune) and on only one radio station (a Spanish-speaking station), and through mailers. *See* Gonzalez Decl., ¶¶27-31; Vander Meade Decl., ¶¶28-32. The disparity weighs against similarity.

*6. Defendants' intent*

Both sides met pre-suit. Tampico claims the Defendants asked to become licensees of the Tampico brand. When Tampico rejected the proposal, the Defendants entered the juice market and set out to trade upon the Tampico brand and good will. The Defendants's account vastly differs. They say they met with Tampico *after* the Defendants had already formed US Co Pack and never discussed the becoming an authorized distributor of Tampico. Instead, the Defendants claim the parties met to discuss the possibility that US Co Pack would mix, blend, and package Tampico beverages for Tampico's authorized distributors. Moreover, Defendants say they chose the name Tan Rico Que Rico! after conducting taste tests of their beverages based upon consumers comments that the drink was "tan rico" or "que rico." *See Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC,* 598 F.Supp. 2d 1248, 1263 (M.D. Fla. 2009) ("good faith can be found if a defendant has selected a mark which reflects the product's characteristics"). Defendants indicate that the fact that they took immediate steps to curtail retailers' use of the abbreviated "TanRico" evidences their good faith. Tampico has not shown the Defendants' adopted its mark, much less acted with an intent to derive a benefit from its reputation. *Frehling,* 192 F.3d at 1340. In view these disputed facts, Tampico has not shown, at least at this stage, it is likely to prevail on this factor.

*7. actual confusion*

The best evidence of the likelihood of confusion is proof of actual confusion.

*Frehling, supra,* 192 F.3d at 1340.[4]  The record is void of any evidence of actual confusion. In fact, the Defendants have filed declarations from multiple store owners attesting that no customers have ever expressed confusion between the Tampico and Tan Rico Que Rico! products.  *See* Marvin Zumbado Decl., Henry Iglesias Decl., Ramon Diurte Decl. (doc. 20, Ex. D, E, and H), Joel Collado Decl. (doc 22, Ex. A).  Although I recognize this circuit's pronouncement that it is "exceedingly difficult to detect instances of actual confusion when, as here, the goods are relatively inexpensive and their actual properties are exactly identical," because of the overwhelming evidence against confusion, I find there is not a likelihood of confusion.  *See AmBrit, supra,* 812 F.2d at 1544.

*C. Conclusion*

For the reasons set forth above, I hereby RECOMMEND Tampico's motion for preliminary injunction (doc. 3) be DENIED.

IT IS SO RECOMMENDED at Tampa, Florida on February 10, 2012.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[4] I recognize that the failure to present such evidence is not fatal; even in the absence of direct proof, I must still consider the actual-confusion factor in light of the facts presented in the case.  *Frehling, supra,* 192 F.3d at 1340.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).